IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rebecca Schneider,

      Plaintiff,

                             Case No. 2:03-cv-01028
                             JUDGE GRAHAM

    v.

United States Enrichment Corp.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Rebecca Schneider ("plaintiff"), a citizen of the state of Ohio, commenced this action in the Pike County, Ohio, Court of Common Pleas against United States Enrichment Corporation ("defendant"), a Delaware corporation with its principal place of business in Maryland. Defendant filed a notice of removal invoking the diversity jurisdiction of this court.

In the complaint, plaintiff asserts various state law causes of action including: (1) disability discrimination in violation of O.R.C. §4112.02; (2) wrongful discharge in violation of Ohio public policy; (3) intentional tort; (4) intentional infliction of emotional distress; and (5) constructive discharge. This matter is before the court on defendant's motion for summary judgment. An oral hearing on the motion was held on Friday, September 2, 2005.

## I. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).

The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case. LaPointe, 8 F.3d at 378. The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case. Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). The Court must view the evidence, all facts, and any inferences that

2

may permissibly be drawn from the facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). <u>See also Eastman Kodak Co. v. Image Technical Servs., Inc.</u>, 504 U.S. 451, 456 (1992).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Patton v. Bearden</u>, 8 F.3d 343, 346 (6th Cir. 1993)(quoting <u>Anderson</u>, 477 U.S. at 251-52).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original); <u>see</u> <u>generally</u> <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879 F.2d 1304, 1310 (6th Cir. 1989).

Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. <u>See also</u> <u>Gregory v. Hunt</u>, 24 F.3d 781, 784 (6th Cir. 1994).

Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations.

<u>Adams v. Metiva</u>, 31 F.3d 375, 379 (6th Cir. 1994).


## II.  Background

At the time of plaintiff's employment, June 26, 1996 until October 11, 2002, defendant was a private company in the business of enriching and de-enriching uranium for commercial use in nuclear reactors.  Plaintiff was employed as a uranium materials handler. Her duties included the physical relocation and movement of uranium through defendant's facility which included several large buildings.  This involved loading and unloading uranium cylinders from various vehicles and inspecting the machines to insure that they were in proper working order.  Material handlers worked in teams and were required to perform physical tasks, operate machines, open and close valves on containers, conduct inspections, complete paperwork, and police designated areas.

Plaintiff spent the majority of her employment in Building X-343 performing the general duties described above.  However, during the last two or three months of her employment, late summer and early fall of 2002, plaintiff worked in Building X-344 and was responsible for the operation of cranes, forklifts, and other equipment necessary to move uranium cylinders weighing between two and ten tons.  Plaintiff also inspected machines, performed physical tasks, and completed paperwork.  Lastly, plaintiff spent

a limited amount of time in Building X-744-G.  Her duties in X-744-G included moving smaller tubes and labeling certain types of cans.  Throughout plaintiff's employment she was a member of the Paper Allied Chemical Employees Union ("PACE").

On December 27, 1998, plaintiff hurt her back attempting to move a portable welding machine in Building X-343.  Plaintiff did not miss any work, but then, in January, 1999, she aggravated the injury.  Her physician, Dr. Christopher Rink, restricted her from performing any work.  Plaintiff returned to work approximately 5 months later, May 26, 1999, but was limited to six-hour shifts and could not lift, push, or pull anything over twenty-five pounds.

Later in September, 1999, because of increased back pain, Dr. Rink again ordered plaintiff to restricted duty.  She was limited to working eight hours a day, forty hours per week, and was restricted from lifting, pulling, or pushing more than twenty-five pounds.

Plaintiff worked continuously from September, 1999, until July, 2001.  In July, 2001, her condition worsened and plaintiff was not able to work for over nine months.  When she returned in April, 2002, she was restricted to eight hour days, the ability to sit when needed, and no lifting, pushing, or pulling more than ten pounds.  Plaintiff was placed in a paperwork position.  On July 19, 2002, the restrictions were slightly relaxed to include lifting

fifteen pounds.  Plaintiff returned to work as a materials handler.

In late July, 2002, defendant began reducing its workforce. Plaintiff retained her job, but was reassigned from Building X-343 to X-344.  To work in the new building, plaintiff needed additional training.  During this training, plaintiff refused to perform some of the tasks required.  Her supervisors said she could "simulate" the tasks to demonstrate her knowledge, but would not be required to physically perform the tasks.  Plaintiff refused to simulate because she believed that was too dangerous.

In mid-September, 2002, plaintiff lodged her first written complaint alleging violations of her work restrictions.  Plaintiff complained that her supervisors were requiring her to perform work in excess of her medical restrictions.  Defendant began an investigation.  Within days, September 25, 2002, plaintiff informed the manager of Building X-344 that she was  going to accept defendant's voluntary reduction-in-force package, which was being offered to certain employees.  Until plaintiff's resignation was complete, she was reassigned to a paperwork position. Plaintiff claims that from the very beginning, defendant forced her to violate her work restrictions and that this aggravated her injuries and caused her to resign her employment.

### III.  Discussion

Defendant moves for summary judgment on all of plaintiff's claims.  In her brief and during oral argument plaintiff did not oppose defendant's motion with respect to the disability discrimination and public policy claims.  Accordingly, summary judgment is granted on these claims.  The court finds that defendant is entitled to summary judgement on plaintiff's remaining claims (intentional tort, intentional infliction of emotional distress, and constructive discharge) because plaintiff has failed to present evidence sufficient to create a genuine issue of material fact on those claims.

### A.  Plaintiff's intentional tort claim.

Ohio defines an intentional tort as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur."  <u>See</u> <u>Hannah v. Dayton Power and Light Co.</u>, 82 Ohio St. 3d 482, 484 (1998).  To prove an intentional tort an employee must show: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and

with such knowledge, did act to require the employee to continue to perform the dangerous task. <u>Gibson v. Drainage Products, Inc.</u>, 95 Ohio St. 3d 171, 174-175 (2002) (citing <u>Fyffe v. Jeno's Inc.</u>, 59 Ohio St. 3d 115, 118 (1991)).  Ohio courts have further held that to establish intent on the part of the employer:

> [P]roof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, that conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk--something short of substantial certainty--is not intent.

<u>Id</u>.

While this test is primarily used when employers are alleged to have intentionally exposed employees to environmental dangers, several courts have noted that it can be applied to dangerous practices or procedures such as requiring employees to work in violation of valid medical restrictions. <u>Bee v. Toth Industries, Inc.</u>, 150 Ohio App. 3d 184, 188 (2002); <u>Sinea v. Denman Tire Corporation</u>, 135 Ohio App. 3d 44, 58 (1999); <u>Raines v. Rubbermaid, Inc.</u>, 112 Ohio App. 3d 384, 389 (1996).  In such circumstances, an employer will be held to have knowledge of dangerous procedures

within the workplace if evidence is presented showing that defendant forced the employee to work in violation of medical restrictions or the employer has knowledge that its policy required employees to work in positions that violated the employees specific medical restrictions. <u>Sinea</u>, 135 Ohio App. 3d at 58; <u>Bee</u>, 150 Ohio App. 3d at 188.

As in all tort cases, plaintiff must also show that the defendant's acts proximately caused plaintiff's injury. <u>Avon Lake City School Dist. v. Ohio Dept of Taxation</u>, 55 Ohio App. 3d 171, 172 (1989); <u>See also</u> <u>Fyffe</u>, 59 Ohio St. 3d 115 ["It is not sufficient to demonstrate that injury was substantially certain to occur ... the plaintiff must prove a nexus between the act or omission of the employer and her injury"].

Additionally, in this case, the applicable statute of limitations requires that plaintiff prove that the alleged intentional tort occurred on or after October 10, 2001. Under Ohio law, intentional torts are governed by a two-year statute of limitations. <u>Stone v. N. Star Steel</u>, 152 Ohio App. 3d 29, 43 (2003) (citing <u>Funk v. Rent-All Mart, Inc.</u>, 91 Ohio St.3d 78 (2001)). Plaintiff's complaint was filed on October 10, 2003. Plaintiff admits she was on medical leave and not working at defendant's plant from July, 2001, until April 29, 2002. Plaintiff retired and no longer worked at the plant after October 11, 2002.

Therefore, to survive summary judgment plaintiff must present specific facts showing that after April, 2002, defendant intentionally required plaintiff to perform work outside of her medical restrictions and that she was injured as a result. Nonspecific, conclusory statements will not overcome a properly supported motion for summary judgment. Fed. Civ. R. 56 (E); <u>Click v. Southern Ohio Correctional Facility</u>, 152 Ohio App. 3d 560, 566 (2003).

Summary judgment is appropriate because plaintiff has failed to present specific, admissible evidence of an intentional tort. A review of plaintiff's memorandum in opposition ("plaintiff's memorandum") and the record reveals many general statements and conclusory allegations, but no specific claim of conduct that raises a genuine issue of material fact for trial.

Plaintiff's memorandum mirrors the complaint in that it contains many broad, general allegations of improper conduct by defendants, but no specifics. For example, plaintiff's memorandum states:

> [Defendant] consistently and routinely violated [her] work restrictions, despite actual knowledge, thereby preventing plaintiff's injury from healing.

> Accommodations were always short lived and inconsistently applied by her supervisors.

> Plaintiff was consistently made to perform duties ... that infringed upon the work restrictions established by at least 3 doctors.

10

> [Defendant violated her work restrictions] "from
> beginning to end ... from '99 from the first time
> they put me on restriction clear up until the end
> when I [retired]."

Absent from plaintiff's memorandum and the record is an account of any specific incident, described in sufficient detail, in which plaintiff was injured because defendant required her to work in violation of her medical restrictions.

The fact that plaintiff was injured and put on restrictions does not aid in showing that defendant forced plaintiff to work in violation of a restriction. Plaintiff has not shown that a specific restriction was in place at a specific time, and that defendant intentionally violated that restriction.

Exhibit D to plaintiff's memorandum contains two medical restriction reports: one dated December 30, 1998, and another dated September 27, 1999. On December 30, 1998, plaintiff was restricted to "LIGHT DUTY, NO LIFTING OVER 10 POUNDS FOR 10 DAYS" and on September 27, 1999, she was limited to "NO LIFTING, PUSHING OR PULLING MORE THAN 25#. TO WORK 8 HOURS/DAY, NO MORE THAT 40 HOURS/WEEK. FREQUENT POSITION CHANGES." These restrictions were to be reviewed in ten and thirty days, respectively. Exhibit D also contains various Physical Medicine and Rehabilitation Reports from 1999 showing that plaintiff, at different times, worked under different work restrictions. Some of the restrictions include prohibitions against working more than six hours a day, frequent bending and squatting, and lifting of more

than 25 pounds.  None of these restrictions are relevant because any claim arising out of restrictions that were imposed prior to October, 2001, is barred by the statute of limitations.

Lastly, Exhibit D contains three letters from Dr. Vicki Hull, which released plaintiff to return to work.  The letters dated April 25, 2002, July 19, 2002, and September 20, 2002, impose different restrictions on plaintiff's work and each state that plaintiff will be evaluated bi-weekly to monitor her progress. Despite the existence of different restrictions at different times, plaintiff has made no effort to tie any particular incident or injury at work with a specific restriction which plaintiff was working under at that time.  Moreover, the restrictions clearly state that they are to be reviewed bi-weekly, yet no evidence has been presented regarding the outcome of these bi-weekly reviews.

Apart from the general allegations that pervade plaintiff's memorandum, several slightly more specific claims are made. Nonetheless, these more detailed claims still fail to satisfy the necessary elements required to maintain an action for intentional tort.  For example, plaintiff alleges that her supervisors, specifically Russ Jeffers, assigned her jobs that violated her restrictions and on one occasion "flat out" instructed her to do the work.  Mem. in Opposition at 9; Plaintiff's Dep. at 87. Plaintiff, when questioned about this incident during her deposition, never identifies the type of work done or how it

violated her restrictions.  She could not provide the date of this incident, the location or building, nor did she say that she was injured as a result.  <u>Id</u>.

Likewise, plaintiff claims she was compelled to perform "sampling" duties that exceeded her work restrictions and lift thirty pound valve covers up to thirty times per shift, but provides no details or specifics.  Mem. in Opposition at 9-10. Plaintiff never identifies who required her to perform this work, when or where it occurred, or how it violated specific work restrictions she was under at the time.  Moreover, she never alleges she was injured as a result.  <u>Id</u>.

Plaintiff also claims that during training in 2002, she was pressured to perform training tasks that violated her restrictions. Plaintiff's Dep. at 235-237.  Plaintiff, however, admits that she refused to perform or even "simulate" the training tasks. <u>Id</u>.

Plaintiff alleges that in 2002, she was injured while lifting and replacing thirty to thirty-five pound temporary lead shields used to reduce radiation exposure.  Plaintiff's Dep. at 131-132. According to the plaintiff, the temporary lead shields had a tendency to fall off, so on several occasions she replaced them. <u>Id</u>.  However, plaintiff does not allege that her supervisors ever ordered her to lift and replace the lead shields or that they even had knowledge that she was engaging in such activities.

13

Plaintiff's testimony regarding these incidents falls short of creating a genuine issue of fact for trial. Plaintiff has not produced any probative evidence that after October, 2001, defendant intentionally required her to perform work outside of her medical restrictions and that she was injured as a result.

The record contains three affidavits that were attached to plaintiff's memorandum. The first, Exhibit A, is plaintiff's affidavit. Exhibits B and C are the affidavits of Karen Smalley ("Smalley") and Rhonda Quillen ("Quillen"), two of plaintiff's former co-workers. Plaintiff's affidavit alleges:

> Over my remaining tenure with the company, I was subjected to repeated and knowing violations of the various work restrictions established by my physicians.

See Plaintiff's Affidavit at ¶12.

> Despite the fact that my work restrictions were communicated to the company on more than one occasion, and were posted, various supervisory personnel over my remaining employment with the company ordered me to perform certain activities that exceeded my work restrictions on a routine basis. These various supervisors included, but are were not necessarily limited to Troy Strode, Russ Jeffers, and Lanny Smith.

See Plaintiff's Affidavit at ¶13.

> Aside from the failure over time to comply with my stated restriction, I was compelled to perform tasks that even [defendant's] safety department characterized as inherently unsafe as performed.

See Plaintiff's Affidavit at ¶14.

14

> However, it was invariably the case that I was
> ordered to perform duties that would exceed my
> restrictions such as lifting more than 20 pounds of
> weight for extended periods of time, or operating
> machinery that did not allow for the freedom of
> movement to reduce the strain on my back and neck.
> Because of this, I was forced to take periodic
> leaves of absence which I did not want to take.

<u>See</u> Plaintiff's Affidavit at ¶16.

Exhibits B and C, the co-worker affidavits, contain similarly

vague allegations.

> [Defendant] was absolutely aware of Plaintiff's
> medical restrictions. Her restrictions were even
> posted in Building X-343 and were known to
> supervisory personnel.

<u>See</u> Smalley Affidavit at ¶7; Quillen Affidavit at ¶7.

> [Defendant], through its supervisory personnel,
> routinely violated Plaintiff's restrictions by
> compelling her to perform certain job activities in
> violation of her work restrictions, knowing that
> she was already restricted due to injury.

<u>See</u> Smalley Affidavit at ¶8; Quillen Affidavit at ¶8.

> She was invariably told to do the jobs listed on
> operating instructions by supervision.

<u>See</u> Smalley Affidavit at ¶10; Quillen Affidavit at ¶10.

> As an example I recall a particular incident that
> occurred in the fall of 1999, in which I observed
> the Plaintiff, while on restrictions, assisting
> another co-worker in moving railcars, which was a
> violation of her restrictions at the time.

<u>See</u> Smalley Affidavit at ¶12.

> I also recall instances in which Plaintiff, after
> being instructed to perform functions in excess of
> her restriction, requested that overtime be made

15

> available to another co-worker so that she would
> not be required to do those violative activities by
> herself. Her requests were refused.

<u>See</u> Smalley Affidavit at ¶13.

These affidavits fail to create a genuine issue of material fact. With the exception of Paragraph 12 in Smalley's affidavit, no dates are provided for any of the alleged acts. Paragraph 12 of Smalley's affidavit describes a violation occurring in 1999, well outside the relevant statute of limitations period. Except for Paragraph 12 and 13 of Smalley's affidavit, no specific incident is described. As noted, the incident referred to in Paragraph 12 is barred by the statute of limitations. Furthermore, there is no claim of injury linked to it. And, no dates, times, places, or claim of injury is related to the request for overtime referred to in Paragraph 13.

With respect to the co-workers' affidavits, defendant presented evidence, that remains undisputed, that Smalley and Quillen did not work with plaintiff in 2002. Thus, plaintiff has failed to rebut defendant's evidence that the matters referred to in their affidavits are barred by the statute of limitations. All three affidavits accuse defendant of failing to implement proper safety precautions with respect to the use of "Paducah Tiger Overpacks." Assuming this issue is even relevant, no genuine issue of fact is created because none of the affidavits describe how the work was performed, when it occurred, or how it may have violated

16

plaintiff's medical restrictions.

Ohio courts have held that proof of an intentional tort must satisfy an "extremely high burden."  <u>See</u> <u>Haney v. The Timken Co.</u>, Stark App. No. 2002CA00310, 2003 WL 1735255, *5 (Ohio App. 5 Dist. 2003).  Moreover, "mere knowledge and appreciation of a risk ... is not intent." <u>See</u> <u>Fyffe</u>, 59 Ohio St. 3d at 118.  To prove intent, plaintiff must show that defendant required its employees to work in violation of their medical restrictions. <u>Sinea</u>, 135 Ohio App.3d at 58.

Because plaintiff has failed to come forward with evidence of any specific incident in which defendant required her to work in violation of a medical restriction which resulted in injury to her, she has failed to show that her intentional tort claim raises a genuine issue of material fact.  Defendant is entitled to summary judgment on plaintiff's intentional tort claim.

**B.  Plaintiff's intentional infliction of emotional distress claim.**

Plaintiff alleges that defendant acted in an extreme and outrageous manner so as to cause serious emotional and physical distress to plaintiff.  The tort of intentional infliction of emotional distress occurs when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." <u>See</u> <u>Yeager v. Local Union 20</u>, 6 Ohio St. 3d 369, 374 (1983).

To survive summary judgment, plaintiff must present evidence that: (1) defendant intended to cause the plaintiff serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct was the proximate cause of plaintiff's serious emotional distress; and (4) plaintiff's mental anguish is serious and of a nature that no reasonable person could be expected to endure it. Phung v. Wast Mgt., Ionc., 71 Ohio St. 3d 408, 410 (1994); Tschantz v. Ferguson, 97 Ohio App. 3d 693, 702 (1994).

Plaintiff's intentional infliction of emotional distress claim fails because plaintiff has failed to present evidence satisfying these essential elements.  In Yeager, the Ohio Supreme court defined "extreme and outrageous" saying:

> It [is] not enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

See Yeager, 6 Ohio St. 3d at 374-375.

Plaintiff has not presented evidence sufficient to prove that defendant's acts amounted to an intentional tort, much less extreme and outrageous conduct that "goes beyond all possible bounds of decency." See id.  Plaintiff's conclusory statements claiming that

18

she was compelled to violate her work restrictions on a consistent basis are simply inadequate without specific factual support.

Ohio courts have held that an action for intentional infliction of emotional distress "must be predicated upon a psychic injury that is both severe and debilitating." Uebelacker v. Cincom Systems, Inc., 48 Ohio App.3d 268, 276 (1988)(citations omitted). To prove such an injury the plaintiff must offer expert medical testimony or the testimony of lay witnesses acquainted with the plaintiff describing significant changes they have observed in the emotional or habitual makeup of the plaintiff.  Id.

Plaintiff has not presented any evidence of a severe and debilitating psychic injury.  She merely alleges "stress" and states in general terms that "the situation has affected her marital relationship and her enjoyment of her life."  Mem. in Opposition at 13-14.  Plaintiff has failed to provide any medical evidence or competent evidence from a lay witness on this issue.

For these reasons no genuine issue of material fact exists and plaintiff's intentional infliction of emotional distress claim must be dismissed.

**C.   Plaintiff's constructive discharge claim.**

To state a claim of constructive discharge an employee must prove that with a discriminatory intent, the employer made working conditions intolerable or so difficult that a reasonable person under the same conditions would have felt compelled to resign.

19

Mauzy v. Kelly Services Inc., 75 Ohio St. 3d 578, 588-589 (1996); Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 882 (6th Cir. 1996).  An objective test is used in determining whether the employee was constructively discharged.  Id.

Defendant's motion for summary judgment on this claim is well taken because constructive discharge is not itself a cause of action.  An underlying cause of action for employment discrimination must exist.  Starks v. New Par, No. 98-1300, 1999 U.S. App. Lexis 9145, *15 (6th Cir. 1999) (citing Kroll v. The Disney Store, 899 F.Supp. 344, 347 (E.D. Mich. 1995)).  See also Keaton v. State of Ohio, No. C2-00-1248, 2002 U.S. Dist. Lexis 19993 at *35-*36 (S.D. Ohio 2002).

Plaintiff alleges that defendant's intentional tort caused the constructive discharge.  If plaintiff's intentional tort claim had survived summary judgment, then perhaps part of her damage claim for that tort could have included a claim that defendant's intentional acts made her continued employment intolerable, but of course for the reasons outlined above, she  failed to show that the intentional tort claim presented a genuine issue of material fact. Because the underlying tort upon which plaintiff has hinged the constructive discharge claim fails, the constructive discharge claim must also fail.

**IV.  Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is granted.  The clerk shall enter final judgment in favor of defendant on all of plaintiff's claims, dismissing plaintiff's complaint with prejudice.  Costs shall be taxed against plaintiff.

It is so ORDERED.

s/James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 13, 2005

21